In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-124 CV


____________________



IN RE CHRISTUS HEALTH SOUTHEAST TEXAS


d/b/a CHRISTUS ST. MARY HOSPITAL







Original Proceeding






OPINION


 This original proceeding involves a discovery dispute. Relator, Christus Health
Southeast Texas d/b/a Christus St. Mary Hospital (St. Mary), seeks mandamus relief from
the trial court's order requiring St. Mary to produce certain documents requested by real
parties in interest, Terry Naegele Russell, et al. (Russell). These items are set out in
Plaintiffs' Fourth Request for Production, numbers 1 - 4, as follows: 

 1. Please produce any and all documents showing the chief complaint of the
patients in the emergency rooms 2, 3, 4, and 5 on March 3, 2003 at 8:37
a.m. Plaintiff does not request the identity of these patients and specifically
requests that defendant redact the identities of the patients involved. 


 2. Please produce any and all documents showing the triage codes of the
patients in the emergency rooms 2, 3, 4, and 5 on March 3, 2003 at 8:37
a.m. Plaintiff does not request the identity of these patients and specifically
requests that defendant redact the identities of the patients involved. 


 3. Please produce any and all documents showing the chief complaint of the
patients who had been moved into emergency rooms other than emergency
rooms 2, 3, 4, and 5 on March 3, 2003 at 8:37 a.m. Plaintiff does not
request the identity of these patients and specifically requests that defendant
redact the identities of the patients involved. 


 4. Please produce any and all documents showing the triage code of the
patients who had been moved into emergency rooms other than rooms 2, 3,
4, and 5 on March 3, 2003 at 8:37 a.m. Plaintiff does not request the
identity of these patients and specifically requests that defendant redact the
identities of the patients involved. 


 To each of these four requests, St. Mary provided the same response: "Objection -
Physician/Patient privilege, hospital patient privilege, HIPAA privilege." The record
provided to us is silent as to any further action by St. Mary until Russell's motion to
compel was filed. Russell's motion to compel included the following counter-argument
to St. Mary's privilege objection: 

 In this case, the de-identified information requested is relevant to the
defenses set forth by Christus in this case. Christus claims that the hospital
was full and no beds were available. The Plaintiffs' contend that Christus
had beds available and should have moved a patient with a lower acuity
level. Christus should not be allowed to use HIPAA as a shield to protect
information that is relevant to the defenses asserted by Christus in this
litigation. Plaintiffs' [sic] therefore request that Christus be compelled to
answer request for production numbers 1 - 4 within three (3) days.


 St. Mary filed a response to the motion to compel entirely ignoring Russell's claim
that HIPAA provided an exception to the general rule prohibiting disclosure of protected
information ("45 C.F.R. § 164.512(e)"), and ignoring Russell's assertion that Christus was
defending the lawsuit by claiming the hospital was full and no beds were available. St.
Mary's response included citations to various cases recognizing the general rule that
communications between a physician and patient are privileged and may not be disclosed.
The response also focused heavily on portions of statutes and rules, and included authority
discussing constitutional recognition of a "zone of privacy," all in support of its contention
that non-party medical records are privileged and, therefore, not discoverable. (1) Although
the trial court's order indicates a hearing on Russell's motion to compel may have taken
place, it also indicates the court only considered "the Motion" in granting Russell the relief
requested. Our record does not include a reporter's record nor do we have any indication
that affidavits were attached to either Russell's motion to compel or to St. Mary's
response. See Tex. R. Civ. P. 193.4(a). Indeed, we have no indication that any evidence
was presented to the trial court prior to its ruling. 

 A writ of mandamus will only issue to correct a clear abuse of discretion or
violation of a duty imposed by law when there is no adequate remedy by appeal. The
relator has the burden to present the appellate court with a record sufficient to establish the
right to mandamus. See Walker v. Packer, 827 S.W.2d 833, 837-39 (Tex. 1992) (orig.
proceeding). With respect to factual matters committed to the trial court's discretion, the
appellate court may not substitute its judgment for that of the trial court. Id. However,
review of a trial court's determination of controlling legal principles is entitled to much
less deference. Id. at 840. In our analysis, we must focus on the record that was before
the court and on whether the decision was not only arbitrary but also amounted to a clear
and prejudicial error of law. See In re Bristol-Myers Squibb Co., 975 S.W.2d 601, 605
(Tex. 1998) (orig. proceeding).

 An examination of the rules of civil procedure pertaining to discovery indicates that
upon receipt of a request for discovery, to protect privileged information or material, a
party should not object to the request based upon privilege. See Tex. R. Civ. P. 193 cmt.
3. Instead, the comment notes that Rule 193 "requires parties to state that information or
materials have been withheld and to identify the privilege upon which the party relies." 
Id. Therefore, instead of objecting to discovery based on privilege, a party may withhold
the privileged material. See In re Maher, 143 S.W.3d 907, 913 (Tex. App.--Fort Worth
2004, orig. proceeding). However, the party must state in the response (or an amended
or supplemental response) or in a separate document that: "(1) information or material
responsive to the request has been withheld, (2) the request to which the information or
material relates, and (3) the privilege or privileges asserted." Tex. R. Civ. P. 193.3(a);
see also Maher, 143 S.W.3d at 913. Then, the party seeking discovery may serve a
written request that the withholding party identify the information and material withheld. 
See Tex. R. Civ. P. 193.3(b); Maher, 143 S.W.3d at 913. Within fifteen days of service
of the request, the withholding party must serve a response that: "(1) describes the
information or materials withheld that, without revealing the privileged information itself
or otherwise waiving the privilege, enables other parties to assess the applicability of the
privilege, and (2) asserts a specific privilege for each item or group of items withheld." 
Tex. R. Civ. P. 193.3(b); Maher, 143 S.W.3d at 913. Thus, the description of the
information or material withheld must be specific enough that the requesting party can
identify each document withheld and assess the applicability of that privilege. Id. Any
party may then request a hearing on a claim of privilege asserted. See Tex. R. Civ. P.
193.4(a); Maher, 143 S.W.3d at 913. 

 In the instant case, Russell's request for production also requested a "schedule"
containing information roughly corresponding to the contents of the privilege log described
under Rule 193.3(b)(1) & (2). Thereafter, as noted above, St. Mary responded to each of
the four requests in question with an "objection" and the notations "Physician/Patient
privilege, hospital patient privilege, HIPAA privilege." Although St. Mary should not
have objected on the basis of privilege, this was not fatal to its privilege assertion. See
Tex. R. Civ. P. 193.2(f). However, our record does not indicate whether or not St. Mary
produced a privilege log, as would appear to be necessitated by Russell's additional request
in anticipation of St. Mary's privilege assertion. 

 Because there is no presumption that documents are privileged, a party who seeks
to limit discovery by asserting a privilege has the burden of proof. See In re E.I. DuPont
de Nemours & Co., 136 S.W.3d 218, 223, 225 (Tex. 2004) (orig. proceeding). This is
initially accomplished by the party's making a prima facie showing of privilege, with the
"prima facie standard" being defined as requiring the "minimum quantum of evidence
necessary to support a rational inference that the allegation of fact is true." See id. at 223
(quoting Texas Tech Univ. Health Sciences Ctr. v. Apodaca, 876 S.W.2d 402, 407 (Tex.
App.--El Paso 1994, writ denied)). However, the Supreme Court has said that "in some
limited circumstances the documents themselves may, standing alone, constitute sufficient
proof." See State v. Lowry, 802 S.W.2d 669, 671 (Tex. 1991); see also In re Anderson,
973 S.W.2d 410 (Tex. App.--Eastland 1998, orig. proceeding). In Anderson, for example,
the court of appeals held it was evident, without any other evidence, that a discovery
request for the identities of patients sought privileged information. Id. at 412. 

 In In re CI Host, Inc., 92 S.W.3d 514 (Tex. 2002) (orig. proceeding), the Supreme
Court found the relator failed to meet its burden to support its objection to an order
requiring production of computer backup tapes containing allegedly privileged information.
Id. at 514, 516-17. The Court stated, "Any party making an objection or asserting a
privilege must present any evidence necessary to support the objection or privilege. Tex.
R. Civ. P. 193.4(a). The trial court should then determine whether an in camera
inspection is necessary; if so, the party seeking protection must segregate and produce to
the court the materials it seeks to protect from disclosure." CI Host, Inc., 92 S.W.3d at
516. The Supreme Court then described the procedural background of the case, including
the lack of proof by relator, CI Host, Inc., as follows:

 At the first discovery hearing, CI Host had the burden to present
evidence supporting its objection, see Tex. R. Civ. P. 193.4(a), but did not
present any evidence to the court. At the second hearing, CI Host offered
CEO Faulkner's affidavit generally describing the nature of CI Host's
business and stating summarily that the backup tapes contained information
such as customers' e-mails, trade secrets, and business documents. It also
offered testimony from its attorney, John Harvey, that he had seen customer
lists and customer indexes and directories on two of the March 1st tapes. 
None of this general testimony provides the factual basis to sustain CI Host's
objection that all of the information on the tapes is "the contents of a
communication" or is "in electronic storage" on the tapes and thus protected
from disclosure by the ECPA. See 18 U.S.C. § 2702. . . . Thus, in light
of CI Host's failure to produce evidence to support its ECPA objection or to
segregate and produce the information it has now admitted is not protected
by the ECPA, we cannot conclude that the trial court abused its discretion
in overruling that objection and ordering the tapes produced.


Id. at 516-17.

 In the instant case, the discovery request sought "any and all" documents showing
the emergency room patients' "chief complaint," and "any and all" documents showing
the triage codes, with any identifying information to be redacted. Relator says these
requests for documents would include the patients' emergency room medical records, and
plaintiffs do not contest this assertion. "Records of the identity, diagnosis, evaluation, or
treatment of a patient by a physician that are created or maintained by a physician are
confidential and privileged and may not be disclosed." See Tex. R. Evid. 509(c)(2). It
would seem likely patients seeking treatment in hospital emergency rooms are there to be
evaluated, diagnosed, or treated by an emergency room physician. Plaintiffs argue
nevertheless that relator is not a physician, and that the privilege is therefore inapplicable
here. 

 The physician-patient privilege belongs to the patient, (2) and the other emergency
room patients on that day are not parties to this litigation. Rule 196.1(c)(1) of the Texas
Rules of Civil Procedure states, "If a party requests another party to produce medical or
mental health records regarding a nonparty, the requesting party must serve the nonparty
with the request for production under Rule 21(a)." Tex. R. Civ. P. 196.1(c)(1). The
record before this Court does not indicate service of the request on the nonparties in this
case. Rule 196.1(c)(2)(B) provides an exception to the service requirement if "the identity
of the nonparty whose records are sought will not directly or indirectly be disclosed by
production of the records." The redaction of the identities of the patients may be sufficient
to satisfy Rule 196.1(c)(2)(B). However, Rule 196.1(c)(2)(B) is an exception to the notice
requirement, not an exception to the privilege. See In re Columbia Valley Reg'l Med.
Ctr., 41 S.W.3d 797, 800 (Tex. App.--Corpus Christi 2001, orig. proceeding). 

 Rule 509(d)(1) provides that "[t]he privilege of confidentiality may be claimed by
the patient or by a representative of the patient acting on the patient's behalf." Tex. R.
Evid. 509(d)(1). Rule 509(d)(2) provides that the physician may claim the privilege on
behalf of the patient. Relator has not shown it is representing the patients, nor has any
physician or patient claimed the privilege. However, merely because relator is not able
to control or claim the privilege does not mean the privilege does not exist or can be
ignored. The patients have not been given an opportunity to claim the privilege, and a
claim of privilege is not defeated by a disclosure which is made without that opportunity. 
See Tex. R. Evid. 512. Even when a patient consents to disclosure, Rule 509(f)(3)
provides the information may be disclosed only to the extent consistent with the authorized
purposes for which consent to release the information was obtained. There is nothing in
the record indicating the nonparties have consented to disclosure for purposes of this
litigation. When nonparties' privacy rights may be detrimentally affected or even
abrogated by disclosure, the Supreme Court has been "loath" to allow a party to
unilaterally waive the privacy rights "by its failing to adhere to the discovery rules." See
In re CI Host, Inc., 92 S.W.3d at 517 (involving disclosure of computer back-up tapes). 
Similarly, we are loath to allow the parties here to waive the other emergency room
patients' physician-patient privileges by failing to adhere to the rules.

 However, Rule 509, the physician-patient privilege rule, includes exceptions. The
plaintiffs rely on the litigation exception in Tex. R. Evid. 509(e)(4) set out below:

 (e) Exceptions in a Civil Proceeding. Exceptions to confidentiality or
privilege in administrative proceedings or in civil proceedings in court exist:


 . . . .


 (4) as to a communication or record relevant to an issue of the physical,
mental, or emotional condition of a patient in any proceeding in which any
party relies upon the condition as a part of the party's claim or defense[.]


The Supreme Court has held that when this exception applies, the physician-patient
privilege is terminated "even though the patient is not a party to the litigation." (3) R.K. v.
Ramirez, 887 S.W.2d 836, 842 (Tex. 1994); see also In re Whiteley, 79 S.W.3d 729, 732
(Tex. App.--Corpus Christi 2002, orig. proceeding). (4) Plaintiffs assert the documents are
"relevant to the defense asserted by Christus that all rooms were full. To respond to this
defense, the triage codes and chief complaints of the patients in the six (6) emergency
rooms when Russell arrived are relevant in order to determine whether a patient with a
lower acuity level could have been moved so that Russell could have received the
immediate care he so desperately needed." The Supreme Court has made clear, however,
that in applying the litigation exception "relevance alone cannot be the test, because such
a test would ignore the fundamental purpose of evidentiary privileges, which is to preclude
discovery and admission of relevant evidence under prescribed circumstances." See
Ramirez, 887 S.W.2d at 842. 

 In Ramirez, the Supreme Court explained as follows the test for determining
whether a party relies upon a medical or mental condition as part of the party's claim or
defense for purpose of the litigation exception:

 Communications and records should not be subject to discovery if the
patient's condition is merely an evidentiary or intermediate issue of fact,
rather than an "ultimate" issue for a claim or defense, or if the condition is
merely tangential to a claim rather than "central" to it. . . . As a general
rule, a . . . condition will be a "part" of a claim or defense if the pleadings
indicate that the jury must make a factual determination concerning the
condition itself. 


Id. at 842-43. The Court noted that "[w]hether a condition is a part of a claim or defense
should be determined on the face of the pleadings, without reference to the evidence that
is allegedly privileged." Id. at 843 n.7. 

 In this case, whether and why the emergency rooms were full with other patients
is not part of a defense pled by relator. The record in this mandamus proceeding does not
include plaintiffs' petition. Plaintiffs say the documents showing chief complaints and
triage codes will show whether there were less seriously ill people who should have been
moved from ER rooms so that Russell could be treated. They argue these medical
conditions are relevant to relator's assertion that the ER was full. While the medical
conditions may be relevant to plaintiffs' negligence claim, relevance alone is not the test
for the litigation exception. As the Supreme Court explained in Ramirez, the test is
whether the jury must make a factual determination concerning the conditions as an
"ultimate" issue for the claim. Because plaintiffs do not argue, and nothing in the record
suggests, that the other patients' conditions are a part of their claim rather than simply
relevant to the case, we do not determine in this proceeding whether the conditions are an
ultimate issue for plaintiffs' claims. 

 Even if some of the information is within an exception to the privilege, or is
otherwise not privileged, any privileged information not meeting an exception must be
protected. Ramirez, 887 S.W.2d at 843. The parties' interest in the evidence is not the
same as the nonparty patients' interest in confidentiality. The trial court must be vigilant
in ensuring the protection of the interests of nonparties who have not been given an
opportunity to be heard. See generally In re CI Host, Inc., 92 S.W.3d at 517. It falls
upon the trial court to give serious consideration to the interests of the nonparties, who are
unaware of this litigation, in maintaining the confidentiality of their medical records. See
generally id. (noting the trial court in that case had entered a protective order concerning
the computer tapes, and expressing confidence the trial court would "give due
consideration to any other privacy interests at stake."). 

 If the trial court determines in further proceedings that the other patients' medical
conditions are part of plaintiffs' claims as pleaded and not merely evidentiary or
intermediate issues of fact, an in camera inspection of the medical information in question
may assist the trial court in tailoring the information sought by plaintiffs so that it is limited
in scope to the litigation exception or to information that is otherwise not privileged. Even
if it is determined by the trial court that the medical conditions of other emergency room
patients are part of plaintiffs' pleaded claims, the trial court still "must ensure that the
production of documents ordered, if any, is no broader than necessary, considering the
competing interests at stake." Ramirez, 887 S.W.2d at 843. "[A]ny information not
meeting this standard remains privileged and must be redacted or otherwise protected." 
Id. 

 The record in this proceeding does not demonstrate compliance with the Supreme
Court's opinion in Ramirez. We conditionally grant the petition for writ of mandamus to
order the trial court to vacate its order. (5) The writ will issue only if the trial court fails to
comply with this opinion.

 PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED. 



 PER CURIAM 



Submitted on April 11, 2005

Opinion Delivered June 30, 2005


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. The provisions cited in the response to the motion to compel included Tex. R.
Evid. 509(c); Tex. Occ. Code Ann. § 159.002 (Vernon 2004); 40 Tex. Admin. Code
§ 19.407 (2005); Health Insurance Portability and Accountability Act of 1996 (HIPAA);
Tex. Health & Safety Code Ann. § 241.15[2] (Vernon 2001); Tex. R. Civ. P.
196.1(c)(3), and Tex. Hum. Res. Code Ann. § 102.003(j) (Vernon 2001). 
2. Rule 509(d) provides that the privilege of confidentiality is claimed on behalf of
the patient.
3. The Court noted the exception represented "a significant departure from the
historical scope of the patient-litigant exception. The exception now terminates the
privileges whenever any party relies upon the condition of the patient as a part of the
party's claim or defense, even though the patient has not personally placed the condition
at issue, and even though the patient is not a party to the litigation." Ramirez, 887 S.W.2d
at 842.
4. But see In re Xeller, 6 S.W.3d 618, 625 (Tex. App.--Houston [14th Dist.] 1999,
orig. proceeding); In re Anderson, 973 S.W.2d 410, 411-12 (Tex. App.--Eastland 1998,
orig. proceeding); In re Dolezal, 970 S.W.2d 650, 652 (Tex. App.--Corpus Christi 1998,
orig. proceeding).
5. Relator also argues that the records are protected by federal and state statutes and
by a constitutional right of privacy. See fn.1, supra. Because we grant the petition based
on Rule 509, we need not address these arguments. We note, however, generally Rule 509
governs disclosures of patient medical records in judicial or administrative proceedings. 
See Ramirez, 887 S.W.2d at 840 n.5. With respect to Texas statutes, the Government
Code provides that rules adopted by the Supreme Court may serve to repeal conflicting
laws and parts of laws governing practice and procedure, but not substantive law, in civil
actions. See Tex. Gov't Code Ann. § 22.004(c) (Vernon 2004). We also note generally
the statutes cited have "court order" exceptions. The Supreme Court has said the litigation
exception to Rule 509 is not unconstitutional. Ramirez, 887 S.W.2d at 843.